**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MEGAN BORING,

Plaintiff,

Case No:
Hon.

v.

CLAWSON SCHOOL DISTRICT
and EDUSTAFF, LLC,

Defendants.

_______________________________________/

THE SHARP FIRM, PLLC
Attorneys for Plaintiff
Heidi T. Sharp (P69641)
43260 Garfield Road, Suite 280
Clinton Township, MI 48038
(586) 226-2627
heidi@sharpfirmlaw.com

_______________________________________/

# PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES PLAINTIFF, Megan Boring, through her attorneys, and for her Complaint against the above-named Defendants hereby states as follows:

## Jurisdictional Allegations

1. This is a civil lawsuit alleging damages from unlawful employment actions taken against Plaintiff because of her sex and in retaliation for opposing sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, and Michigan's Elliott-Larsen Civil Rights Act.

2. This Court has original federal question jurisdiction over Plaintiff's claims arising under Title VII pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims arising under ELCRA pursuant to 28 U.S.C. § 1367 because those claims arise from the same facts and circumstances as Plaintiff's federal claims and form part of the same case or controversy.

4. Plaintiff Megan Boring is an individual who resides in Oakland County, Michigan.

5. Defendant Clawson School District ("Clawson" or "District") is a public school district located in Oakland County, Michigan.

6. Defendant Edustaff is an entity that provided staffing and payroll services in connection with Plaintiff's employment as Head Varsity Softball Coach for Clawson High School.

7. Plaintiff was employed through Edustaff and assigned to work for Clawson School District as the Head Varsity Softball Coach at Clawson High School.

8. At all relevant times, Clawson exercised control over Plaintiff's day-to-day employment, including the supervision and direction of Plaintiff's coaching duties and the decision to remove Plaintiff from the Head Varsity Softball Coach position.

9. Edustaff administered Plaintiff's compensation in connection with her employment with Clawson School District.

10. The acts and transgressions complained of in this Complaint occurred in Oakland County, Michigan.

11. Jurisdiction is otherwise proper in this court.

12. Venue is otherwise proper in this court.

**Exhaustion of Administrative Remedies**

13. Plaintiff timely filed Charges of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), Charge Nos. 471-2026-08262 and 471-2026-08264, alleging discrimination arising from the employment actions described herein.

14. On October 6, 2026, the EEOC issued Plaintiff two (2) Determinations and Notice of Rights, notifying Plaintiff that the EEOC would not proceed further with its investigation and advising Plaintiff of her right to institute a civil action against the Respondent(s) identified in the Charges.

15. Plaintiff has exhausted her administrative remedies and timely brings this action within ninety (90) days of her receipt of the EEOC's Determination and Notice of Rights.

## Background

16. Plaintiff is an experienced softball coach who previously served as the Clawson High School Junior Varsity Softball Coach during the 2023 season and the Berkley High School Junior Varsity Head Softball Coach during the 2024 and 2025 seasons.

17. In or around October 2025, Clawson Athletic Director Brian Mauer ("Mauer") began actively recruiting Plaintiff to serve as the Head Varsity Softball Coach at Clawson High School.

18. Plaintiff initially declined the position; however, Mauer continued encouraging her to accept, ultimately arranging a meeting with Plaintiff and male assistant coaches Todd McMillan ("McMillan") and Jim Myren ("Myren") in November 2025.

19. Plaintiff thereafter accepted the Head Varsity Softball Coach position and began preparing the team for the upcoming season in December 2025.

20. As Head Varsity Softball Coach, Plaintiff was responsible for directing the varsity softball program, establishing coaching expectations, developing practice plans, and supervising the assistant coaches.

21. Prior to the season, Plaintiff communicated her coaching philosophy, expectations, and program structure to McMillan and Myren, neither of whom initially objected.

22. Shortly after the season began in March 2026, McMillan began disregarding Plaintiff's coaching decisions, interfering with her practice plans, and undermining her authority in front of players.

23. On March 18, 2026, following an incident in which McMillan challenged Plaintiff's coaching decisions and disregarded her practice plan, Plaintiff contacted Mauer to report his conduct and express concerns regarding the lack of respect for her authority.

24. During that conversation, Plaintiff told Mauer that McMillan's conduct made her feel as though she had been hired merely to be a face for the program rather than its actual Head Coach.

25. Mauer responded, "funny you should say that," and informed Plaintiff that McMillan had stated on two separate occasions that they needed to "find a female face for the program and Jim and I will just run the team".

26. The statement demonstrated that McMillan intended for Plaintiff to serve as the female figurehead of the program while he and Myren retained actual control over the team, notwithstanding Plaintiff's position as Head Coach.

27. Despite knowing of McMillan's expressly sex-based statement and Plaintiff's concerns regarding his conduct, Mauer failed to take corrective action. Instead, he advised Plaintiff to manage the male assistant coaches by making them feel as though her coaching decisions were their ideas.

28. Following Plaintiff's complaint, McMillan and Myren continued to exclude Plaintiff from coaching discussions, disregard her authority, and resist her direction of the program.

29. On March 24, 2026, Plaintiff again complained to Mauer regarding McMillan and Myren's continued interference with her ability to lead the team.

30. During that conversation, Mauer acknowledged the gender-related nature of the conflict, advising Plaintiff that he had suggested to McMillan that the issue might be that McMillan and Myren were not accustomed to working under a female coach.

31. Plaintiff expressly advised Mauer that McMillan and Myren would not be treating her in this manner if she were male. Mauer did not disagree.

32. On or about April 4, 2026, Plaintiff met with McMillan and Myren to address the ongoing issues and directly confronted McMillan regarding his statement that the program merely needed a "female face".

33. Plaintiff explained that the statement was offensive and that McMillan and Myren's conduct demonstrated their unwillingness to recognize her authority as a female Head Coach.

34. McMillan acknowledged making the statement and became upset that his comments had been disclosed to Plaintiff. During the meeting, McMillan resigned, withdrew his resignation, then resigned again.

35. Following the meeting, Plaintiff informed Mauer of the confrontation and McMillan's reaction. Mauer was therefore aware that Plaintiff had directly opposed the sex-based treatment she was experiencing.

36. On April 5, 2026, Myren announced that he would no longer work with the varsity softball team.

37. Mauer thereafter contacted Plaintiff and discussed several options for addressing the situation, including removing Plaintiff from her position, reinstating McMillan and Myren, and assuming the Head Coach position himself.

38. Plaintiff objected and expressly advised Mauer that the conflict was occurring because she was a female Head Coach who had exercised authority over male assistant coaches.

39. Plaintiff asked Mauer whether the same situation would be occurring if a male Head Coach had exercised the same authority and made the same coaching decisions. Mauer responded, “No”.

40. Despite Mauer's knowledge of the discriminatory conduct, Plaintiff's repeated complaints, and his acknowledgment that a male Head Coach would not have been treated the same way, the District elected to remove Plaintiff rather than address McMillan and Myren's conduct.

41. On April 6, 2026, Mauer contacted Plaintiff and communicated the decision that she would no longer serve as Head Varsity Softball Coach.

42. During that conversation, Plaintiff expressly stated, “I'm not quitting on them,” and “I don't want it to sound like I had a choice,” making clear that she was not voluntarily resigning.

43. Nevertheless, Mauer proceeded with Plaintiff's removal and arranged for Plaintiff to inform the varsity softball players that she would no longer be their coach.

44. Plaintiff informed the team that decisions had been made with which she did not agree and that the circumstances were outside her control. Following the announcement, Mauer approached Plaintiff and stated, “This is on me, I am sorry”.

45. Following Plaintiff's termination, McMillan and Myren were permitted to return to the varsity softball program, and Mauer, a male, assumed Plaintiff's position as Head Varsity Softball Coach.

46. Notwithstanding Plaintiff's express refusal to resign, the District subsequently represented that Plaintiff had voluntarily stepped away from the program. In an April 16, 2026 communication to softball parents, the District stated that Plaintiff had not been fired but had instead chosen to leave.

47. On May 7, 2026, Edustaff Payroll Specialist Samantha Groelsma contacted Plaintiff regarding compensation she had previously received for her position as Head Varsity Softball Coach.

48. Groelsma advised Plaintiff that Clawson School District had informed Edustaff that Plaintiff was "no longer coaching this season" and that compensation paid to Plaintiff on April 17, 2026, had been overpaid in error.

49. Specifically, Edustaff advised Plaintiff that Clawson School District sought to recover $461.07 in previously paid wages and requested authorization to reverse those funds from Plaintiff's account on May 15, 2026.

50. Clawson School District's communication to Edustaff and its efforts to recover Plaintiff's previously paid wages further demonstrate that the District treated Plaintiff's employment as having ended, notwithstanding its subsequent representations that Plaintiff voluntarily stepped away from the program.

51. Plaintiff did not voluntarily resign from her position. Rather, Plaintiff was terminated effective April 6, 2026, after repeatedly complaining about sex-based discrimination and the refusal of male assistant coaches to recognize her authority.

**COUNT I- SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

52. Plaintiff re-alleges and reaffirms all previous paragraphs as though contained fully herein.

53. At all material times, Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act of 1964.

54. At all material times, Defendants were employers within the meaning of Title VII and were prohibited from discriminating against Plaintiff with respect to the terms, conditions, and privileges of her employment because of her sex.

55. Plaintiff is female and was qualified to perform the duties and responsibilities of Head Varsity Softball Coach.

56. During Plaintiff's employment, male assistant coaches McMillan and Myren repeatedly undermined Plaintiff's authority and resisted her leadership because she was female.

57. McMillan expressly stated that the program needed a "female face" while he and Myren would actually run the team, demonstrating that Plaintiff's sex was a motivating factor in their refusal to recognize her authority as Head Coach.

58. Defendant Clawson School District, through Athletic Director Mauer, was aware of the discriminatory statement and conduct directed toward Plaintiff.

59. Mauer further acknowledged the sex-based nature of the conflict, including that the same situation would not have occurred had Plaintiff been a male Head Coach exercising the same authority.

60. Notwithstanding its knowledge of the discriminatory conduct, Defendant Clawson School District failed to take corrective action and instead terminated Plaintiff's employment on April 6, 2026.

61. Following Plaintiff's termination, McMillan and Myren were permitted to return to the varsity softball program, and Mauer, a male, assumed Plaintiff's position as Head Varsity Softball Coach.

62. Plaintiff's sex was a motivating factor in the decision to terminate her employment and in the discriminatory treatment she experienced.

63. Defendants' conduct constituted unlawful sex discrimination in violation of Title VII.

64. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits, loss of employment opportunities, emotional distress, humiliation, embarrassment, and other economic and noneconomic damages.

WHEREFORE, Plaintiff prays for a judgment that is fair, just, and in accordance with the facts produced in Court considering all potential compensatory damages including attorney fees, costs and interest.

## COUNT II - RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

65. Plaintiff re-alleges and reaffirms all previous paragraphs as though contained fully herein.

66. At all material times, Plaintiff was protected from retaliation for opposing unlawful employment practices under Title VII.

67. Plaintiff engaged in protected activity when she repeatedly complained to Athletic Director Mauer regarding the discriminatory treatment she experienced as a female Head Varsity Softball Coach.

68. Specifically, Plaintiff complained about McMillan's statement that the program merely needed a “female face,” the male assistant coaches' refusal to recognize her authority, and the disparate treatment she experienced because of her sex.

69. Plaintiff further engaged in protected activity when she directly confronted McMillan regarding his discriminatory statement and advised Mauer that the same treatment would not have occurred had she been male.

70. Defendant Clawson School District, through Mauer, had actual knowledge of Plaintiff's complaints and her opposition to sex discrimination.

71. Shortly after Plaintiff engaged in protected activity, Defendant Clawson School District terminated Plaintiff's employment effective April 6, 2026.

72. Rather than address the discriminatory conduct Plaintiff reported, Defendant Clawson School District removed Plaintiff from her position and permitted the male assistant coaches whose conduct she opposed to return to the program.

73. Plaintiff's protected activity was a but-for cause of the decision to terminate her employment.

74. Defendants' conduct constituted unlawful retaliation in violation of Title VII.

75. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages, including but not limited to lost wages and benefits, loss of employment opportunities, emotional distress, humiliation, embarrassment, and other economic and noneconomic damages.

WHEREFORE, Plaintiff prays for a judgment that is fair, just, and in accordance with the facts produced in Court considering all potential compensatory damages including attorney fees, costs and interest.

**COUNT III- SEX DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**

76. Plaintiff re-alleges and reaffirms all previous paragraphs as though contained fully herein.

77. At all material times, Plaintiff was an employee and Defendants were employers within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

78. Plaintiff was qualified for and capable of performing the duties and responsibilities of Head Varsity Softball Coach.

79. Plaintiff was subjected to discriminatory treatment by male assistant coaches who refused to recognize her authority because she was female and who

expressly intended that she serve as the "female face" of the program while they retained control.

80. Defendant Clawson School District, through Athletic Director Mauer, knew of the discriminatory conduct and acknowledged that Plaintiff would not have experienced the same treatment had she been male.

81. Despite such knowledge, Defendant Clawson School District terminated Plaintiff's employment on April 6, 2026, permitted the male assistant coaches to return, and replaced Plaintiff with Mauer, a male.

82. Plaintiff's sex was a motivating factor in Defendants' discriminatory treatment of Plaintiff and the decision to terminate her employment.

83. Defendants' actions constituted unlawful sex discrimination in violation of MCL 37.2202(1)(a).

84. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits, loss of employment opportunities, emotional distress, humiliation, embarrassment, and other economic and noneconomic damages.

WHEREFORE, Plaintiff prays for a judgment that is fair, just, and in accordance with the facts produced in Court considering all potential compensatory damages including attorney fees, costs and interest.

**COUNT IV- RETALIATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**

85. Plaintiff re-alleges and reaffirms all previous paragraphs as though contained fully herein.

86. Pursuant to MCL 37.2701(a), an employer shall not retaliate against an individual because the individual has opposed a violation of the Elliott-Larsen Civil Rights Act.

87. Plaintiff engaged in protected activity when she repeatedly complained to Athletic Director Mauer regarding sex-based discrimination, including McMillan's statement that the program merely needed a "female face" and the male assistant coaches' refusal to recognize her authority because she was female.

88. Plaintiff further opposed the discriminatory conduct when she confronted McMillan regarding his statement and expressly advised Mauer that she was being treated differently because of her sex.

89. Defendant Clawson School District, through Mauer, was aware of Plaintiff's protected activity and the discriminatory treatment about which she complained.

90. Shortly after Plaintiff's complaints, Defendant Clawson School District terminated Plaintiff's employment effective April 6, 2026.

91. Rather than address Plaintiff's complaints, Defendant Clawson School District removed Plaintiff from her position, permitted McMillan and Myren to return, and replaced Plaintiff with a male Head Coach.

92. Plaintiff's protected activity was a significant factor in Defendants' decision to terminate her employment.

93. Defendants' conduct constituted unlawful retaliation in violation of MCL 37.2701(a).

94. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits, loss of employment opportunities, emotional distress, humiliation, embarrassment, and other economic and noneconomic damages.

WHEREFORE, Plaintiff prays for a judgment that is fair, just, and in accordance with the facts produced in Court considering all potential compensatory damages including attorney fees, costs and interest.

Dated: November 12, 2026

Respectfully Submitted,

/s/ *Heidi T. Sharp*

By: Heidi T. Sharp (P69641)
Attorney for Plaintiff
43260 Garfield, Suite 280
Clinton Township, MI 48038
(586) 226-2627
heidi@sharpfirmlaw.com

## **DEMAND FOR JURY TRIAL**

Plaintiff, through her attorneys, THE SHARP FIRM, PLLC, makes a demand for a trial by jury in the above-entitled matter.

Dated: November 12, 2026

Respectfully Submitted,

/s/ *Heidi T. Sharp*

By: Heidi T. Sharp (P69641)
Attorney for Plaintiff
43260 Garfield, Suite 280
Clinton Township, MI 48038
(586) 226-2627
heidi@sharpfirmlaw.com